**6IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TODD GREEN, | ) | |
| Petitioner, | ) | Civil Action No. 10-282 Erie |
| | ) | |
| v. | ) | District Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| JOSEPH MAZURKIEWICZ, <u>et al.</u>, | ) | |
| Respondents. | ) | |

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

## I. <u>RECOMMENDATION</u>

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

## II. <u>REPORT</u>[1]

### A. **Relevant Background**

In this habeas case, Petitioner Todd Green challenges the judgment of sentence imposed by the Court of Common Pleas of Venango County at C.R. No. 639-2005. The Honorable William White, who presided over this case, explained:

> The offense, in this case at C.R. No. 639-2005, occurred on July 10, 2005. [Petitioner] was charged with possession with intent to manufacture methamphetamine, an ungraded felony; criminal attempt to deliver methamphetamine, an ungraded felony; and possession of paraphernalia, an ungraded misdemeanor.
>
> [Petitioner] was tried on a companion case at C.R. No. 312-2005 on March 10, 2006. The jury convicted him on all counts. He was later sentenced on two felony counts in that case. In that case, significantly, while the jury was deliberating [Petitioner], who was on bail, absconded.

---

[1] Respondents have submitted an Appendix that contains all relevant transcripts as well as documents from the Common Pleas Court's file. The documents in the Appendix are continuously paginated (1 through 438) and shall be cited to as "App. at __." Additional state court records were also submitted separately from the Appendix.

In this case on April 3, 2006, apparently after he was apprehended on his bail violation, [Petitioner], through counsel [Assistant Public Defender Leland Clark, Esquire], filed a motion for a non-jury trial…. On April 6, 2006, on the very day the case was scheduled for trial, the witnesses were present, [Petitioner] was present, and the court was ready to proceed with a non-jury trial which [Petitioner] requested, [Petitioner] offered to plead guilty.

(App. at 70-71).[2]

As Judge White noted, on April 6, 2006, Petitioner pleaded guilty at C.R. No. 639-2005 to one count of possession with intent to manufacture a controlled substance (Count I). In exchange, the Commonwealth agreed to drop the two additional counts against him (for criminal attempt and use/possession of drug paraphernalia). At his plea hearing, Petitioner was advised that if he pleaded guilty, he would give up the right to challenge the denial of his suppression motion on appeal. (App. at 191-92, 203-07). He also was advised that if he pleaded guilty:

[Y]ou have the right to ask to withdraw your plea up until the time you are sentenced. You do that by filing a motion with the Court setting forth the reasons why you believe you should be permitted to withdraw your plea. Whether we grant that request is left to our discretion and the law. You automatically have the right to file such a motion; whether or not it is granted is not so automatic. It is easier, however, to withdraw your plea before you are sentenced rather than after you are sentenced.

- - -

[T]he judge is free to impose upon you a sentence up to and including the maximum sentence of fine and imprisonment … [I]f the judge imposes a sentence that you are dissatisfied with, you will not be permitted to withdraw your plea for that reason alone….

I do not know what your sentence will be at the time you enter your plea. I will tell you the maximum penalty that you could receive as well as any mandatory minimum sentences that you must receive….

- - -

… [A]fter you plead guilty, you do have post-sentence rights. First of all, you would have a right to file two motions with the judge challenging the validity and lawfulness of

---

[2] Petitioner had filed a pre-trial motion to suppress. The Honorable William L. Henry presided over an evidentiary hearing on the motion and denied it. (App. at 317-84).

your plea and asking the judge to modify your sentence. Those motions must be filed within ten days after you are sentenced, must be in writing, and must specify the reasons for your request.

Secondly, you do have a right to take an appeal to the Superior Court after you plead guilty, but you are limited to four specific grounds for appeal. The four specific grounds for appeal are:

1. That the Court did not have jurisdiction in your case. We only have jurisdiction in the case where crimes are committed in Venango County. You could challenge the jurisdiction of this Court.

2. That your plea was not knowingly, intelligently, and voluntarily made by you. You could challenge the lawfulness and validity of your plea and also object if you ask to withdraw your plea and the judge does not allow you to do that.

3. That the sentence imposed by the Court is illegal. You can challenge the lawfulness of your sentence; and,

4. That the attorney who represented you was incompetent or ineffective. You can challenge the effectiveness of the attorney's services you receive.

All other grounds for appeal are waived. If you plead guilty, that appeal must be taken within thirty days after you are sentenced. That is a permanent deadline. If you obtain a new lawyer, you still must appeal within thirty days after you are sentenced. If you do not take your appeal within thirty days after you are sentenced, you can never appeal after that and the proceedings become final.

(App. at 205-07).[3]

Judge White also explained to Petitioner before he entered his plea that, if he pleaded guilty, he faced a maximum sentence of 10 years' imprisonment. Petitioner stated that he understood the sentence that the court could impose. (App. at 220-21). There was nothing in the plea agreement or stated at the plea hearing that indicated that Petitioner's sentence in C.R. No. 639-2005 would run concurrent with the sentence to be imposed at C.R. No. 312-2005.

---

[3] This information was conveyed to Petitioner via a video recording. The transcription of the video recording is part of the transcript of Petitioner's guilty plea proceeding. (App. at 188-211).

Prior to accepting Petitioner's plea, Judge White asked him if he understood that by pleading guilty he gave up any possible defenses that he might have. Petitioner replied that he understood. Judge White then found that Petitioner "has intelligently, voluntarily, understandingly tendered the plea." (App. at 229-30).

Judge White sentenced Petitioner in both C.R. No. 639-2005 and C.R. No. 312-2005 on May 22, 2006. For his convictions at C.R. No. 312-2005, Judge White sentenced Petitioner to 38-80 months in prison. At C.R. No. 639-2005, Judge White sentenced him to a term of 16-40 months in prison, thus imposing a sentence that was in accordance with what had been explained to him at the plea proceeding. Judge White imposed the sentence at C.R. No. 639-2005 to be served consecutive to that at C.R. No. 312-2005. Therefore, Petitioner's aggregate sentence is 54-120 months in prison.

At the end of the sentencing hearing, Judge White asked Petitioner if he needed anything explained to him. Petitioner responded: "Not really." Petitioner asked: "The second one I pled guilty to was not concurrent?" Judge White explained to him that it was not, and Petitioner replied: "Okay." (App. at 61).

Several days later, Petitioner, through counsel, filed a motion to withdraw his guilty plea. He claimed that he had told Attorney Clark prior to sentencing that he wanted to withdraw his plea and Clark failed to follow his directive. (App. at 435-38). Petitioner also claimed that he was innocent. Specifically, he directed the court to testimony that Officer Dilley recently had given in a Crawford County trial, which he claimed provided him with evidence to support an entrapment defense at C.R. No. 639-2005.

Because Petitioner was accusing Attorney Clark of misconduct, Clark moved to withdraw as counsel. Judge White permitted him to do so and appointed John Lackatos, Esquire, to represent Petitioner.

4

Judge White held a hearing on Petitioner's motion on June 30, 2006. (App. at 236-316). Petitioner, Attorney Clark, and Deputy Charles Shuffstall testified at the hearing. At its conclusion, Judge White made extensive findings of fact. Because those findings are relevant to this habeas proceeding, the Court sets them forth in full:

> In this hearing the focus has been on whether or not the defendant [Petitioner] did instruct his defense counsel [Clark] at the time of his sentencing on May [22], 2006, or before, to withdraw his guilty plea. The court received the testimony of Leland Clark who was the public defender in this county for several years…. In this case defense counsel had submitted a suppression motion which was denied by a senior judge specially presiding. Counsel's tactic then was to proceed with a bench trial and on the morning of the bench trial, which was April [6], 2006, the defendant entered a guilty plea pursuant to a plea agreement which is part of the record in this proceeding … The plea agreement essentially provided the defendant would be promised a sentence in the standard range to the charge of manufacturing methamphetamine. The Commonwealth was unwilling to deal on the topic of whether the sentence would be concurrent or consecutive to the other case of this defendant which was C.R. 312 of 2005 where the defendant had been convicted by a jury [on March 10, 2006] of criminal conspiracy to manufacture meth. The defendant had absconded during the jury deliberations in the trial case. The defendant was quite focused at the time of the plea on what would happen to him because he had absconded.

> Mr. Clark credibly testified that the defendant was incarcerated at the time of the guilty plea on April [6], 2006. Mr. Clark said he was optimistic about the suppression issue in this case but was concerned about damage control with regard to what would happen to the two felony counts that were to be sentenced on the jury trial verdict at C.R. 312 of 2005. Mr. Clark told us it was his advice to his client to waive the white flag and proceed to a plea. Mr. Clark told us that as he was talking to his client about the plea that the defendant repeatedly said to him he was anxious to have the sentences run concurrently, and Mr. Clark told him that he was not in a position to promise that they would run concurrently but that he would try to persuade the judge that they should run concurrently. The court as we have stated, did conduct a full colloquy with the defendant at the time of the guilty plea hearing on April [6], 2006, and we are prepared to find as we know that we did that the defendant had made a knowing and intelligent and voluntary decision to waive his trial and enter a plea.

> What is somewhat frustrating about this particular case is that the Commonwealth had all its witnesses present, we were literally at the start of the trial, non-jury, ready to proceed when the defendant changed his mind and wanted to enter the guilty plea. It certainly demonstrates some vacillation on the part of the defendant and we see inconvenience, if not prejudice, to the Commonwealth since all of its witnesses were present and waiting to

5

testify as we took the plea. There were no discussions, or even any implication at that time, that defendant had some expectation of a deal for concurrent sentences.

Part of the dispute at the time of the plea had been as to the defendant's prior record score. Defense counsel was successful in persuading the Commonwealth that the prior record score should be two. Up to the point of the day of sentencing or the day before sentencing when Mr. Clark spoke with the defendant, he told him they were successful in getting a prior record score of two but that there was no agreement on consecutive or concurrent. Mr. Clark credibly told this Judge that his recollection was that his last conversation with the defendant was just before the sentence hearing the defendant said, "Okay. Let's do it," and that his impression was that the defendant had acceded to proceed to sentencing on the deal which was as it stood April [6] and as written in the agreement.

Mr. Clark told us that as they had met for the last time at the jail before sentencing that the defendant was still insistent that he wanted concurrent sentencing and the defendant had made the utterance, "If I can't get it to be concurrent, I want to withdraw the plea," and that the defendant had brought up a point that in the Crawford County trial which had occurred after the defendant pled and was convicted in this county by the jury but before he was sentenced that Officer Dilley had testified in that proceeding that he authorized the defendant to possess [methamphetamine] precursors. This would, of course, set up the entrapment defense except that this version was entirely inconsistent with what Officer Dilley told the jury [on March 10, 2006 during] the defendant's jury trial in this county at C.R. 312 of 2005. The defendant told Attorney Clark that he felt that this change in Dilley's testimony would give him a better chance of getting acquitted on an entrapment theory. Mr. Clark agreed that the evidence, if accurate, could be useful in asserting an entrapment theory since he could use it, if for nothing else, to impeach Officer Dilley.

Mr. Clark, on cross examination, established that he has represented at least thirty, perhaps more than fifty, felony drug cases in his capacity as a public defender in this county and in Chambersburg in Franklin County. He has represented hundreds of criminal defendants and done at least five or six felony drug trials.

Attorney Clark was aware that there was a possibility of a federal drug charge involving meth against the defendant. He said he recalls reading about that in the presentence investigation report in this case.

He acknowledged that the defendant and he had developed a poor working relationship which he attributed to the fact that the defendant was vacillating on his decisions. He told us that he never told the defendant he would get concurrent sentencing. He told him that would be up to the judge, but that concurrent [sentences] would be [his] sentence hearing goal.

The defendant told us that he told Mr. Clark at the time of the meeting in the jail immediately before the sentence hearing, "Please withdraw my plea unless there is an agreement to [concurrent] sentencing so that the sentences run concurrently." He told us that as his case was called for sentencing he had just been brought over from the jail, that he did not have sufficient time to talk to Attorney Clark before the hearing to learn whether or not Attorney Clark had been successful in getting the DA to modify the agreement. He said they talked about ten seconds and that Attorney Clark was only able at that point to utter that there would be no minimum and that the prior record score was two. At that point, the judge entered the courtroom and his case was called.

- - -

The defendant acknowledged that he was aware that he could receive five to ten years in this case for the one felony count. He acknowledged, as the Judge told him at this hearing, that he would be hard pressed to testify differently at his trial if the plea were allowed to be withdrawn since he did during the guilty plea colloquy provide the judge with a detailed factual basis under oath of the offense. In the factual basis he gave the judge at the time of the plea, he did not present a defense of entrapment.

The defendant did tell the Judge that he believed he has a viable defense based upon the entrapment theory and that he is not guilty based upon the entrapment theory. He contends that Officer Dilley did authorize him to possess precursors and in fact encouraged him to possess precursors. He has not told us that Officer Dilley caused him to possess precursors.

The defendant has written several letters to his defense counsel, to the Commonwealth, and to the court. The two letters to the court are in evidence as Court Exhibit Nos. 1 and 2 in which the defendant expresses a desire to be sentenced concurrently, although he does not, as far as we can tell in those letters, express a desire to withdraw his plea.

The Commonwealth has pointed out and we find that the defense has proffered no evidence at this hearing that the defendant, notwithstanding several written letters to the Court, the DA, and defense counsel, ever in writing instructed Mr. Clark to withdraw his plea. There is no credible evidence that defendant explicitly instructed Mr. Clark to withdraw the plea before he was sentenced.

- - -

Under all of the circumstances, we have no basis to find that defendant instructed Mr. Clark, before sentencing, to withdraw the plea. We accept Mr. Clark's testimony as credible and in making that conclusion we note Mr. Clark would have no motive (self-interest) in doing otherwise than as he perceived the defendant wanted. The defendant, at the sentencing hearing, either before or after the sentence was announced, never asked to withdraw his plea. The defendant, who was a voracious writer of letters, never wrote that he wanted to withdraw his plea. This defendant, during his testimony at trial, when he

7

absconded as the jury deliberated, and even now, has vacillated on what he says is the truth and therefore he has scant credibility.

(6/30/06 Findings of Fact at 1-10 (emphasis in original). <u>See also</u> App. at 312-13).

Because Petitioner was seeking to withdraw his plea after his sentence had been imposed, and because Judge White found that Petitioner had not instructed Clark to withdraw his guilty plea prior to his sentencing, Petitioner was required to demonstrate "manifest injustice" in order to prevail on his motion to withdraw. (<u>See</u> App. at 310-11). <u>See also</u> 16A Pennsylvania Criminal Practice § 25:6 at 460 (West 2011) (collecting cases) ("Since allowing the withdrawal of a guilty plea after sentencing would allow the defendant to use a guilty plea as a sentence testing device, a defendant must show prejudice on the order of *manifest injustice before a guilty plea may be withdrawn after sentencing*.").

After he issued his factual findings, Judge White stated that he wanted to review, if possible, the transcripts of Officer Dilley's testimony in the Crawford County case and of Petitioner's sentencing hearing. (App. at 312). As it turned out, Judge White did not review Officer Dilley's testimony from the Crawford County case. Nonetheless, he determined that Petitioner failed to meet his burden of demonstrating that he should be permitted to withdraw his guilty plea. Accordingly, on July 27, 2006, Judge White filed an order denying the motion. (Order dated 7/27/06). The next day, due to a clerical error, the court sent out another order that denied that same motion, and which directed Petitioner to file a concise statement of matters complained of on appeal. (Order dated 7/28/06; App. at 74).

Petitioner did not file a direct appeal with the Superior Court of Pennsylvania. On or around February 12, 2007, he filed a *pro se* motion for collateral relief in the Court of Common Pleas pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. (App. at 81-89). Petitioner claimed that Attorney Lackatos had provided him with ineffective assistance because he had told him to file a direct appeal but Lackatos did not do so. (App. at 82-83). Petitioner also asserted

8

"numerous claims of prior counsel's [Attorney Clark's] ineffectiveness in connection with the entry of his plea[.]" (App. at 67).

Judge White appointed William Cisek, Esquire, to represent Petitioner. Cisek subsequently filed a Turner/Finley no-merit letter. (5/6/08 Letter from Cisek to Judge White). On December 30, 2008, Judge White presided over an evidentiary hearing on the issue of whether Petitioner had in fact instructed Lackatos to pursue a direct appeal. He noted at the commencement of the hearing that Petitioner's remaining claims had no merit for the reasons set forth in Cisek's letter. (App. at 91).

Both Petitioner and Lackatos testified at the PCRA hearing. At its conclusion, Judge White found as fact that Petitioner *did not instruct Lackatos to file an appeal*:

> [Petitioner] told us that he did tell Mr. Lackatos at the conclusion of the hearing [to withdraw his guilty plea] to perfect the appeal although he cannot tell us if Mr. Lackatos acknowledged it. He does not recall what Mr. Lackatos said in response. He says he may have written Mr. Lackatos a letter but he is not sure. This conversation apparently occurred at the conclusion of the hearing on June 30, 2006. Mr. Lackatos says he does not recall [Petitioner] telling him to perfect an appeal. Hence, he did not perfect an appeal. Under these circumstances, we accept the credibility of Mr. Lackatos who is an attorney. He practices a good deal in front of this court. He has always been a straight-shooter with this judge. We accept Mr. Lackatos's testimony as credible. We do not accept [Petitioner's] testimony where it is in conflict with Mr. Lackatos's. Therefore, we will deny the [PCRA] motion.

(App. at 154-56).

Petitioner pursued a *pro se* appeal. The Superior Court identified two distinct claims before it: (1) that Lackatos was ineffective for failing to file a direct appeal; and, (2) that Petitioner's guilty plea was not knowingly and intelligently entered because he was not informed before entering the plea that his sentences in both cases could be imposed consecutively.[4] (App. at 67). Judge White addressed the

---

[4]      "A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" Bousley v. United States, 523 U.S. 614, 618 (1998), quoting Brady v. United States, 397 U.S. 742, 748 (1970).

latter issue, which he had not addressed in his December 30, 2008 Findings of Fact, in his Rule 1925(b) Opinion. He explained that that claim should be denied because it was without merit. (App. at 78-80).

On November 9, 2009, the Superior Court issued a Memorandum in which it affirmed Judge White's decision to deny PCRA relief. (App. at 66-69). It denied both of Petitioner's claims on the merits.

Petitioner now raises before this Court the same two claims that he raised before the Superior Court in his PCRA appeal. He also claims that the state court "erred in failing to address all of [his] issues in his PCRA on [their] merit" and that "a search warrant was issued without probable cause." [ECF No. 6 at 8, 10]. Respondents have filed their Answer [ECF No. 11], portions of the Common Pleas Court's file, and Petitioner's appellate briefs.

### B.    Discussion

#### (1)    Standard Of Review

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Petitioner's convictions were obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'"), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). See also Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010).

In describing the role of federal habeas proceedings, the U.S. Supreme Court, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

Several years after the Court made this observation, Congress enacted AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits in State court proceedings* unless the adjudication of the claim–
>
>> (1) resulted in a decision that was *contrary to,*[5] *or involved an unreasonable application of,*[6] *clearly established Federal law, as determined by the Supreme Court of the United States*; or
>>
>> (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding*.

(Emphasis added).

Thus, AEDPA circumscribes a federal court's review of a state prisoner's federal constitutional claim when the state court has adjudicated that claim on the merits. Importantly, review under

---

[5] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert, 387 F.3d at 234, quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

[6] "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Lambert, 387 F.3d at 234, quoting Williams, 529 U.S. at 407.

§ 2254(d) is limited to the record that was before the state court. <u>Cullen v. Pinholster</u>, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011). <u>See</u> <u>also</u> <u>Brown v. Wenerowicz</u>, 663 F.3d 619, 628-29 (3d Cir. 2011); <u>Roundtree v. Balicki</u>, 640 F.3d 530, 538 (3d Cir. 2011).

The Supreme Court has stressed the "highly deferential" review that this Court must accord the state court's decision when it is review a claim under § 2254(d):

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." <u>Williams v. Taylor</u>, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u>, at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." <u>Id.</u>, at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than <i>de novo</i> review. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

<u>Renico v. Lett</u>, — U.S. — , 130 S.Ct. 1855, 1862 (2010). The Supreme Court has also further elaborated:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. <u>Cf.</u> <u>Felker v. Turpin</u>, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. <u>Jackson v. Virginia</u>, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

<u>Harrington v. Richter</u>, — U.S. —, 131 S.Ct. 770, 786-87 (2011).

Finally, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), a federal habeas court must presume that all of the state court's *factual findings* are correct unless the presumption is rebutted by clear and convincing evidence.  See Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010), citing 28 U.S.C. § 2254(e)(1).  See also Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000), quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court); Miller-El v. Cockrell, 537 U.S. 322, 339-41 (2003).

### (2)    Petitioner's Challenge to His Guilty Plea

The Supreme Court has strictly limited the circumstances under which a guilty plea may be attacked on collateral review, noting:  "It is well settled that a voluntary and intelligent plea of guilt made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."  Bousley, 523 U.S. at 621, quoting Mabry v. Johnson, 467 U.S. 504, 508 (1984).  In an attempt to get around the limitation his guilty plea has on his availability to receive relief on collateral review, Petitioner contends that his plea was not knowingly and intelligently entered because he had not been informed that the court could impose a sentence in this criminal case (C.R. No. 639-2005) consecutive to the sentence he would be receiving in his other criminal case (C.R. No. 312-2005).  Judge White addressed this same claim in his 1925(b) Opinion:

> [Petitioner] contends that he was not told that the sentences could run consecutive as to the two different C.R. numbers where he was being sentenced.  [Petitioner], upon the day of trial, decided to change his plea from not guilty to guilty in proceedings at C.R. No. 639-2005.  With the witnesses waiting, we conducted the colloquy and the defendant was clearly told, on page thirty-three of the guilty plea hearing transcript that the offense was an ungraded felony carrying a maximum of ten years in jail and a $10,000.00 fine and that the defendant, therefore, could receive up to five years minimum and ten years maximum plus the $10,000.00 fine.  This was in the context of the plea agreement

13

wherein [Petitioner] dealt with the District Attorney on the basis of receiving a minimum sentence in the standard range. The sentence ultimately imposed did comply with the agreement and [Petitioner], on count one at C.R. 639-2005, received a sentence in the standard range. [Petitioner] now claims that it was improper for the Court to sentence him consecutively in the two cases at C.R. 312-2005 and C.R. 639-2005. At C.R. 312-2005, the defendant had been convicted by a jury of two counts including possession with intent regarding methamphetamine and, at C.R. 639-2005, as we have just stated the defendant entered the plea on the morning testimony was to begin. Significantly at that point in time, the Commonwealth's witnesses, some from some distance, were present and we colloquied [Petitioner], while witnesses awaited and then took his plea pursuant to the plea agreement. The plea agreement called for the defendant to enter a plea to count one of possession with intent to manufacture methamphetamine and to be sentenced at no more than the standard range in the proceedings at C.R. 639-2005. We did not expressly state [at] the guilty plea colloquy at C.R. 639-2005, that the sentences could run consecutively, but we did clearly state the maximum permissible punishment which is five to ten years. We did also go over the plea agreement with the defendant. In fact, at the time the Court did the colloquy with the defendant, we did not even know as we discussed the sentencing with him, that he would be sentenced on both cases at the same time; although, at the conclusion of the guilty plea hearing, it was then arranged that both cases would be sentenced at the same time. [Petitioner's] contention that he was misled and believed we could not impose consecutive sentences is belied by the defense counsel's comments at page twenty-eight of the sentencing hearing transcript wherein counsel for [Petitioner] asked for concurrent sentencings in the proceedings at C.R. 312-2005. We simply cannot find anything on the record that would indicate that [Petitioner] was misled with regard to whether he would be sentence concurrently or consecutively as to the one count at C.R. 639-2005. He was clearly told the maximum permissible punishment under that count and the sentence, as imposed in fact conformed to the guideline standard range of eighteen months, such a sentence was clearly less than the statutory maximum of five (5) to ten (10) years allowed.

(App. at 78-79). In affirming Judge White's decision, the Superior Court held:

[Petitioner] asserts that he was never told before entering the plea in No. 639-2005 that his sentence could be run consecutively to the sentence in No. 312-2005. While [Petitioner] concedes that he was told the maximum permissible sentence was 5 to 10 years, he claims that his actual aggregate sentence was greater, contrary to his expectations.

After multiple hearings on this issue, Judge White concluded that [Petitioner's] guilty plea was knowingly and voluntarily entered. At the plea proceeding, the trial court explained to [Petitioner] that the only recommendation as to the sentencing was that he be sentenced in the standard range. (N.T. Guilty Plea, 4/6/06, at 34.) Although [Petitioner] was not specifically told that his sentences could be run consecutively, he was clearly told that the maximum permissible sentence in No. 639-2005 was 5 to 10 years. (Id. at 33). The aggregate sentence he received, for both cases, was 54 to 120 months, or 4 ½ to

14

10 years.  Thus, any claim that the total sentence deviated greatly from the sentence he expected at the time he entered the plea is specious.

(App. at 68-69).[7]

There is no basis for this Court to disturb the state court's decision under AEDPA's deferential standard of review.  28 U.S.C. § 2254(d).  As the state court concluded, Petitioner was informed of the possible term of imprisonment that he faced if he pleaded guilty in this case, and the sentence subsequently imposed fell within that term.  He was not misled about the possible sentence he faced if he decided to plead guilty.[8]  In fact, at the PCRA hearing, Petitioner's admitted that the plea agreement "did not say that [the sentence that would be imposed] was going to run concurrent[.]"  (App. at 107).

When he entered his plea, Petitioner acknowledged that:  (1) no promises were made in the course of the plea negotiations that were not discussed at the proceeding; (2) he had had enough time to go over the case with his counsel (Clark); (3) he was satisfied that pleading guilty was in his best interest; and (4) he was satisfied with Clark's advice and services.  (App. at 227-28).  At the conclusion of the plea proceeding, Judge White found "that [Petitioner] has intelligently, voluntarily, understandingly tendered the plea."  (App. at 230).  No one promised or assured Petitioner that the sentences to be imposed in his criminal cases would be concurrent.  Petitioner is not entitled to have his plea voided because Judge White decided to impose consecutive sentences.

---

[7]     Respondents contend that Petitioner procedurally defaulted his claim that his guilty plea was not voluntary, knowing, and intelligent because he did not raise that claim on direct appeal.  [ECF No. 11 at 5].  The Superior Court did not deny that claim for procedural reasons, however.  It adjudicated it on the merits.  Therefore, the claim is not procedurally defaulted.

[8]     Petitioner also claims that his plea was defective because he "was not advised of the rights he would be losing by pleading guilty," including his right to challenge the denial of his pre-trial suppression motion.  [ECF No. 6 at 7].  That argument plainly is without merit, as the transcript of his plea proceeding demonstrates otherwise.  (App. at 189-211, 227-230).  During the PCRA hearing, the Commonwealth introduced the certified copy of the transcript to prove that Petitioner had been present when his rights were being explained to him.  (App. at 103-05).

Based upon all of the forgoing, Petitioner's claim that his plea was not knowingly, voluntarily, and intelligently entered should be denied.

### (3)    Attorney Lackatos's Alleged Failure to File a Direct Appeal

Petitioner asserts that he told Attorney Lackatos to file an appeal with the Superior Court if Judge White denied his motion to withdraw his guilty plea. He claims that Attorney Lackatos failed to follow his directive and thus provided him with constitutionally ineffective assistance of counsel.

Ineffective assistance claims are analyzed under the familiar two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner must show: (1) that counsel's representation fell below an objective standard of reasonableness, 466 U.S. at 688; and (2) that counsel's deficient performance prejudiced him, id. at 694. "Where[,]" as is the case here, "the basis of the ineffective assistance claim is counsel's failure to appeal, a more specific version of the Strickland standard applies." Harrington v. Gillis, 456 F.3d 118, 125 (3d Cir. 2006), citing Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000). In Flores-Ortega, the Supreme Court reiterated that "a lawyer *who disregards specific instructions* from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." 528 U.S. at 477. "Prejudice is presumed from counsel's failure to file a notice of appeal when so requested by a client." Solis v. United States, 252 F.3d 289, 293-94 (3d Cir. 2003). "In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken… the question whether counsel has performed deficiently [Strickland's first prong] by not filing a notice of appeal is answered by first asking a separate, but antecedent, question: whether counsel consulted with the defendant about an appeal." Flores-Ortega, 528 U.S. at 478.[9] If counsel consults with the defendant, he "performs in a professionally unreasonable manner only by failing to follow the

---

[9]    The Supreme Court "employ[ed] the term 'consult' to convey a specific meaning– advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478.

defendant's express instructions with respect to an appeal." Id. If counsel fails to consult with the defendant, "the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." Id.

"Because the decision to appeal rests with the defendant[,]" the Supreme Court observed, "the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal." Id. at 479. However, it declined to adopt a *per se* rule mandating consultation in every case, explaining:

> We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in Strickland and common sense. See id., at 689, 104 S.Ct. 2052 (rejecting mechanistic rules governing what counsel must do).… We … reject a bright-line rule that counsel must always consult with the defendant regarding an appeal.
>
> We instead hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. See id., at 690, 104 S.Ct. 2052 (focusing on the totality of the circumstances). *Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.* Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

Id. at 479-80 (first emphasis in original).[10]

---

[10]    If counsel failed to consult with the defendant about pursuing an appeal, *and this failure constituted deficient performance*, the question then becomes whether the deficiency was prejudicial (Strickland's second prong). "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Flores-Ortega, 528 U.S. at 484. The defendant is under no obligation "to demonstrate that his hypothetical appeal might have had merit." Id. at 486. Because in

Turning now to the specifics of this case, Judge White found as **fact** that Petitioner *did not instruct Lackatos to file an appeal*.  There is no basis for this Court to disturb that factual determination under AEDPA.  Thus, this case is one in which the defendant neither instructed his counsel to file an appeal nor asked that an appeal not be taken.  Respondents have not directed the Court to any evidence that Lackatos consulted with Petitioner.  Accordingly, in order to establish <u>Strickland</u>'s first prong (objectively unreasonable performance), <u>Flores-Ortega</u> requires Petitioner to demonstrate that Lackatos had a constitutional duty to consult with him because either:  (1) "a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal)," or (2) he "reasonably demonstrated to [Lackatos] that he was interested in appealing."  528 U.S. at 480.  The Superior Court recognized that this was the appropriate evaluation.[11]  (App. at 68, citing <u>Commonwealth v. Bath</u>, 907

---

this case Petitioner has not demonstrated <u>Strickland</u>'s first prong (deficient performance), this Court does not need to reach the prejudice prong.

[11]    In denying this claim, the Superior Court set forth the appropriate considerations under <u>Flores-Ortega</u>/<u>Strickland</u>. That it did not go into a detailed review of those considerations does not mean that its decision does not qualify for AEDPA's deferential standard of review, or that it did not perform an appropriate analysis under <u>Flores-Ortega</u>/<u>Strickland</u>.  As the Supreme Court has explained in the context of a summary state court disposition:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2).  There is no text in the statute requiring a statement of reasons.  The statute refers only to a "decision," which resulted from an "adjudication."  As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.  <u>See</u> <u>Chadwick v. Janecka</u>, 312 F.3d 597, 605-606 (C.A.3 2002); <u>Wright v. Secretary for Dept. of Corrections</u>, 278 F.3d 1245, 1253-1254 (C.A.11 2002); <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 311-312 (C.A.2 2001); <u>Bell v. Jarvis</u>, 236 F.3d 149, 158-162 (C.A.4 2000) (en banc); <u>Harris v. Stovall</u>, 212 F.3d 940, 943, n. 1 (C.A.6 2000); <u>Aycox v. Lytle</u>, 196 F.3d 1174, 1177-1178 (C.A.10 1999); <u>James v. Bowersox</u>, 187 F.3d 866, 869 (C.A.8 1999).  And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d).  <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).  Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.

> There is no merit to the assertion that compliance with § 2254(d) should be excused when state courts issue summary rulings because applying § 2254(d) in those cases will encourage state courts to withhold explanations for their decisions.  Opinion-writing practices in state courts are influenced by considerations other than avoiding scrutiny by collateral attack in federal court.  <u>Cf.</u> <u>In re Robbins</u>, 18 Cal.4th 770, 778, n.1, 77 Cal.Rptr.2d 153, 959 P.2d 311, 316, n. 1 (1998) (state procedures limiting habeas are "a means of

A.2d 619, 623 (Pa.Super. 2006), which applied <u>Flores-Ortega</u>).  Because the Superior Court applied the correct legal standard, its adjudication passes federal habeas review under the "contrary to" clause of § 2254(d)(1).  See <u>Williams</u>, 529 U.S. at 406.

The only remaining question for this Court to decide is whether the Superior Court's decision denying this claim was an "unreasonable application of" <u>Flores-Ortega</u>/<u>Strickland</u>, or an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  In conducting this analysis the Court is cognizant that:

> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," [<u>Strickland</u>, 466 U.S.] at 689, 104 S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [<u>Knowles v. Mirzayance</u>, 556 U.S. at —, 129 S.Ct. 1411, 1420 (2009)].  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  556 U.S., at —, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u>, 131 S.Ct. at 788.

Petitioner has not overcome AEDPA's deferential standard of review.  There is no credible evidence that he "reasonably demonstrated to counsel that he was interested in appealing," <u>Flores-Ortega</u>, 528 U.S. at 479, and Judge White expressly found that he did not instruct Lackatos to file an appeal.

In reviewing the remaining inquiry – whether "a rational defendant would [have] want[ed] to appeal," <u>id.</u>, – the Court shall look to whether "there [were] non-frivolous grounds for appeal."  There

---

protecting the integrity of our own appeal and habeas corpus process," rather than a device for "insulating our judgments from federal court review" (emphasis deleted)).  At the same time, requiring a statement of reasons could undercut state practices designed to preserve the integrity of the case-law tradition.  The issuance of summary dispositions in many collateral attack cases can enable a state judiciary to concentrate its resources on the cases where opinions are most needed.  See Brief for California Attorneys for Criminal Justice et al. as Amici Curiae 8 (noting that the California Supreme Court disposes of close to 10,000 cases a year, including more than 3,400 original habeas corpus petitions).

<u>Harrington</u>, 131 S.Ct. at 784.

were none. Petitioner testified at the PCRA hearing that he wanted to raise three claims on direct appeal. (App. at 112, 154-53). The first was that his plea was not knowing and intelligent because he "was never informed that the sentences could be imposed consecutive." (App. at 112). As discussed in detail above, the Superior Court ended up reviewing and denying this claim on the merits in the PCRA appeal. (App. at 68-69). That it did so demonstrates that, notwithstanding Lackatos's failure to raise the claim on direct appeal, Petitioner did not lose the ability to receive merits review of this claim in his PCRA appeal. It also demonstrates that the claim was frivolous because, as the state court determined in the PCRA proceeding, Petitioner had been told the possible sentence he faced before he pleaded guilty, the sentence imposed fell within the range that he had been told, and he was never promised that he would receive a concurrent sentence.

The second issue that Petitioner said he wanted to raise in his direct appeal was that the trial court had erred in denying his suppression motion. That claim is frivolous because Petitioner waived his right to raise that issue on appeal when he pleaded guilty.

The third and final issue that Petitioner asserted that he wanted to raise on direct appeal was that the trial court erred in denying his post-sentence motion to withdraw his guilty plea. (App. at 154-53). The primary basis upon which Petitioner claimed he was entitled to withdraw his plea was his insistence that he had told Attorney Carter to withdraw his plea *prior to his sentencing hearing*. After an evidentiary hearing on the issue, Judge White found as fact that Petitioner had not done so. Therefore, Petitioner had to demonstrate a "manifest injustice" in order to prevail on his motion to withdraw. Because he failed to present sufficient evidence to satisfy that heavy burden, this Court must conclude that any challenge to Judge White's decision to deny the motion to withdraw would have been frivolous.

Based upon all of the foregoing, Petitioner has failed to demonstrate that the Superior Court's adjudication of this claim was "contrary to, or involved an unreasonable application of" Strickland and

Flores-Ortega, or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). According, it must be denied.

### (4)    PCRA Errors

Petitioner claims that the state court erred in failing to address on the merits all of the issues he raised in the PCRA proceeding. It is difficult to discern exactly what claims Petitioner is contending the state court failed to address. In the PCRA proceeding, the state court reviewed the merits of the claims that Petitioner contends should have been raised on direct appeal within the context of reviewing his ineffective assistance of counsel claim. (See App. at 75-80,154-56. See also App. at 69 ("Judge White has thoroughly addressed [Petitioner's] claims ... Therefore, we incorporate these decision into this memorandum[.]"). It did not review on the merits Petitioner's suppression claim because he waived that claim when he pleaded guilty.

In any event, this claim is not cognizable. As the Court of Appeals has explained:

The federal courts are authorized to provide collateral relief where a petitioner is in state custody or under a federal sentence imposed in violation of the Constitution or the laws or treaties of the United States. 28 U.S.C. §§ 2254, 2255. *Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.*

Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) (internal citations omitted) (emphasis added); see also Lambert, 387 F.3d at 247 ("[A]lleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction.").

Based upon all of the foregoing, this claim should be denied.

**(5)     Suppression Issue**

Judge Henry presided over Petitioner's pre-trial motion in which he sought suppression of the seized evidence. (App. at 317-85). He denied the motion, and Petitioner waived his ability to contest that decision when he pleaded guilty. Notwithstanding his waiver of any suppression claim, Petitioner now argues that the search warrant was issued without probable cause and therefore the evidence seized should have been suppressed.

This claim must be denied because Petitioner waived it. It must also be denied for the additional reason that it is not cognizable in federal habeas. In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held that a federal court may not grant a state prisoner habeas corpus relief on a claim that evidence obtained in an unconstitutional search or seizure was introduced at his trial if the State had already provided an "opportunity for full and fair litigation" of the claim, explaining:

> [T]he additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs. To be sure, each case in which such claim is considered may add marginally to an awareness of the values protected by the Fourth Amendment. There is no reason to believe, however, that the overall educative effect of the exclusionary rule would be appreciably diminished if search-and-seizure claims could not be raised in federal habeas corpus review of state convictions. Nor is there reason to assume that any specific disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant. The view that the deterrence of Fourth Amendment violations would be furthered rests on the dubious assumption that law enforcement authorities would fear that federal habeas review might reveal flaws in a search or seizure that went undetected at trial and on appeal. Even if one rationally could assume that some additional incremental deterrent effect would be presented in isolated cases, the resulting advance of the legitimate goal of furthering Fourth Amendment rights would be outweighed by the acknowledged costs to other values vital to a rational system of criminal justice.
>
> In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary

22

rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

428 U.S. at 493-94 (footnotes and internal citations omitted).  See also Deputy v. Taylor, 19 F.3d 1485, 1490 (3d Cir. 1994) (rejecting a Fourth Amendment claim because the petitioner had had a full and fair opportunity to litigate it in the state court, and noting that under Stone, "[e]ven otherwise potentially meritorious Fourth Amendment claims are barred on habeas when the petitioner had a full and fair opportunity to litigate them.").  It cannot be disputed that Petitioner had a full and fair opportunity to litigate this claim in the state court.  Therefore, this claim is not cognizable in habeas.

Based upon all of the forgoing, this claim must be denied.

### C.     Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Applying that standard here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied.  Accordingly, a certificate of appealability should be denied.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 8, 2012

cc:     The Honorable Sean J. McLaughlin
        United States District Judge